UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONRAD F. NELSON,

      Plaintiff,

v.                                              Case No. 8:07-cv-1990-T-17

TARGET CORPORATION,
a Minnesota corporation,

      Defendant/Third-Party Plaintiff,

v.

TOWER CLEANING SYSTEMS, INC.,
a Pennsylvania corporation,

      Third Party Defendant.
_____/

## ORDER ON DEFENDANT/COUNTER PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

      This cause is before the Court on Defendant/Third-Party Plaintiff's Motion for Summary Judgment filed June 6, 2009 (Doc. 34) and response thereto by Third Party Defendant (Doc. 41). For reasons set forth below, Defendant's motion is denied.

BACKGROUND

      On November 2, 2007, the plaintiff, Conrad Nelson, filed a complaint against the defendant/third-party plaintiff, Target Corporation ("Target"), in the U. S. District Court for the

Middle District of Florida. (Doc. 2). Nelson claims to have been injured through Target's negligence in maintaining lighting systems while Nelson cleaned Target's parking lot at 6295 W. Waters Avenue in Tampa, Florida. Nelson seeks damages and court costs. Target answered with affirmative defenses on November 2, 2007, and included a defense stating that Target is not responsible for any injuries because it hired Tower Cleaning Systems, Inc. ("Tower") to clean Target's parking lot. (Doc. 3). On July 29, 2008, Target moved to join Tower and filed a Third-Party Complaint on August 1, 2008. (Docs. 10, 12). Tower was joined on August 21, 2008 and answered with affirmative defenses on September 15, 2008. (Docs. 14, 15). On June 3, 2009, Target moved for summary judgment against Tower. (Doc. 34). Tower responded on June 16, 2009. (Doc. 41). The parties dispute whether a contract exists between Tower and Target which requires Tower to defend, indemnify, and hold harmless Target in this action.

Target represents that Exhibit C attached to its summary judgment motion is the contract between itself and Tower relating to the cleaning of the parking lot on W. Waters Avenue. (Doc. 34-4). Exhibit C contains nine pages in total: pages 1 through 7 labeled "Services Conditions of Contract" ("Services Conditions"), page 8 labeled "Compliance Certification," and page 9 labeled "Subcontractor Compliance Certification." The Services Conditions is a version dated December 27, 2004 and includes sections relating to indemnification and liability. (*Id.* at 3-4). The document refers to Target and a "Contractor" defined as the recipient of the "Agreement," where the "Agreement" is defined as "the Data Sheet, these Services Conditions of Contract, the Rate Agreement, the Scope of Work, and, as applicable, any documents referenced on or

attached to the Data Sheet." (*Id.* at 1). Target did not provide the Data Sheet, the Rate Agreement, the Scope of Work, or any documents referenced or attached to the Data Sheet that may be part of the Agreement.

Another version of the contract purported to be the contract between Target and Tower relating to the cleaning of the parking lot on W. Waters Avenue was included as Exhibit A of Target's joinder motion. (Doc. 10-2). Exhibit A is comprised of a document labeled "Scope of Work" and a December 27, 2004 version of the Services Conditions. The Scope of Work is a November 18, 2004 version that refers to an unidentified "Contractor." Exhibit A did not include or reference the Compliance Certification or Subcontractor Compliance Certification provided in Exhibit C of Document 34-4 as part of the contract.

The Compliance Certification on page 8 of Exhibit C is a version dated September 2, 2004, and signed and notarized on January 26, 2005. The contractor is identified as US Maintenance. It was signed by someone identified as the Vice President of US Maintenance. Page 8 contains no reference to the Services Agreement, Data Sheet, Rate Agreement, or Scope of Work.

The Subcontractor Compliance Certification on page 9 of Exhibit C is a version dated September 2, 2004, and signed and notarized on January 26, 2005. The contractor is identified as US Maintenance. It was signed by someone identified as Robert Steinhagen, Vice President of US Maintenance. Page 9 contains no reference to the Services Agreement, Data Sheet, Rate Agreement, or Scope of Work.

STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). All facts and inferences are to be viewed in the light most favorable to the non-moving party. *Id.* at 255. There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

DISCUSSION

Contracts must include offer, acceptance, and consideration between the parties. *Murray v. MINNCOR*, 596 N.W.2d 702, 704 (Minn. App. 1999), *review denied*, (Minn. Sept. 28, 1999). "A meeting of the minds is a necessary element of a contract." *Murray v. Puls*, 690 N.W.2d 337, 344 (Minn. App. 2004). A lack of consideration means no valid contract was formed. *Franklin v. Carpenter*, 244 N.W.2d 492, 495 (Minn. 1976). Consideration is something of value exchanged for a promise or performance after a bargain between the parties. *Powell v. MVE Holdings*, 626 N.W.2d 451, 463 (Minn. App. 2001). Several documents relating to the same

transaction and executed at the same time "will be construed to reference each other" and may form a contract. *Carlson v. Estes*, 458 N.W.2d 123, 127 (Minn. App. 1990).

Target has presented two versions of its purported contract with Tower: a Services Conditions combined with a Scope of Work provided with its joinder motion, and a Services Conditions combined with a Compliance Certification and a Subcontractor Compliance Certification in Target's summary judgment motion. The Services Conditions includes no price, work description or location, term of contract, identification of "Contractor," agreement date, or signatures in either version of the purported contract. Only one of these purported contracts contains any signatures, and these are on documents than do not have any reference or demonstrated relationship to the Services Conditions.

Tower maintains that the Services Conditions is not a contract between itself and Target. (Doc. 15). Target has not presented evidence that the Services Conditions in the pleadings was the offer presented to Tower, nor that Tower accepted the terms contained in this Services Conditions. Neither purported contract contains any recitation of consideration between Target and Tower, which might be found the documents referenced in the Services Considerations as part of the agreement, such as the Rate Agreement, but not provided by Target. A lack of identification of the parties in the Services Conditions could show a lack of a "meeting of the minds." Though the Compliance Certification and Subcontractor Compliance Certification identify Tower and separate documents should be considered together, Target has shown no

5

evidence that these documents were executed at the same time or relate to the same agreement, as required by *Carlson*. 458 N.W.2d at 127.

Target's showing of a contract between Target and Tower relating to the W. Waters Avenue parking lot is deficient in many respects.  Viewing the facts in the light most favorable to the Tower as the non-moving party, a jury could reasonably find that neither version of the purported contract, or even the combination of the Services Conditions, Scope of Work, Compliance Certification, and Subcontractor Compliance Certification, constituted a valid contract binding Target or Tower in any way.  Target does not suggest there was any other agreement that would require Tower to defend, indemnify, or hold harmless Target in this matter.  Therefore, the existence of a contract between Target and Tower relating to the cleaning of the parking lot on W. Waters Avenue is a genuine issue of material fact to liability in the negligence action.  The motion for summary judgment is denied.  Accordingly, it is:

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 34) be **DENIED**. This case will be set for a pre-trial conference and trial as soon as possible.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 13th day of July, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to all parties and counsels of record